UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANETTE SMITH,

    Plaintiff,

v.                                         Case No. 3:16-cv-410-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Supplemental Security Income ("SSI"). Plaintiff claims her disability began on January 1, 2012. (Tr. 116.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on March 31, 2014, at which Plaintiff was represented by a non-attorney representative. (Tr. 25-55.) The ALJ found Plaintiff not disabled since June 13, 2012, the date of her SSI application. (Tr. 10-19.) In reaching the decision, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 13-14.)

Plaintiff appeals the Commissioner's decision that she was not disabled since June 13, 2012. Plaintiff has exhausted her available administrative

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 12, 14.)

remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

   I.   **Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

When a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her "pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain," pursuant to 20 C.F.R. § 416.929, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

3

objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.[2] The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

---

[2] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3); SSR 96-7p.

4

**II.    Discussion**

Plaintiff argues that the ALJ failed to properly evaluate her need for a hand-held assistive device and improperly rejected her complaints of leg pain and weakness, in light of the results of the October 2012 EMG study, multiple references to peripheral neuropathy throughout the record, and the fact that Plaintiff has been prescribed Gabapentin for a long time.  Plaintiff urges the Court to remand this case "for purposes of additional medical evaluation specifically to determine if there is a need for a hand[-]held assistive device and to further assess [Plaintiff's RFC] and obtain additional vocational testimony." (Doc. 16 at 6-7.)  Defendant responds that the ALJ applied the correct legal standards and his decision is supported by substantial evidence.  The Court agrees with Defendant.

The ALJ found that Plaintiff had the RFC to perform a reduced range of light work, as follows:

> In the course of an eight-hour workday, the claimant can sit, stand, and walk off and on with reasonable and customary breaks for six hours each, lift and/or carry 20 pounds occasionally (up to one-third of the workday) and 10 pounds or less frequently (up to two-thirds of the workday).  She can push and/or pull arm/hand controls frequently with the upper extremities and operate leg/foot pedal controls with the lower extremities on an occasional basis.  The claimant can occasionally climb ramps and stairs but is precluded from climbing ropes, ladders and scaffolding.  She can perform all other postural activities – balancing, stooping, kneeling, crouching and crawling all on an occasional basis.  Within the defined weight limits, the claimant has no additional limitation of function in using her upper extremities and can reach in all directions, handle, finger and feel

>without limitation. . . . The claimant does require a temperature controlled work setting away from unprotected heights and cannot tolerate exposure to concentrated vibration or dangerous moving machinery. . . .

(Tr. 13-14.)

In making this finding, the ALJ considered Plaintiff's testimony that she could only walk two blocks, sit for 15 or 20 minutes, was unable to stand still, and used a cane to prevent herself from falling. (Tr. 15.) The ALJ also considered Plaintiff's physical exams, which were "largely within normal limits," Plaintiff's reports of no pain to her medical providers, and Plaintiff's ability to carry out normal activities. (*Id.*) The ALJ noted there were indications in the record to "some neuropathy associated with [Plaintiff's] HIV condition as well as a left ankle fracture and fusion some years ago[.]" (*Id.*) As to Plaintiff's neuropathy, the ALJ stated:

> The September 2012 neurology exam suggested that the claimant's neuropathy may be due to her underlying HIV and additional testing was ordered (Exhibit 5F/10); however, the claimant did not voice such complaints to her doctors treating her for the HIV and examinations did not detect neurological abnormalities of the lower extremities (Exhibits 8F; 9F; 12F). The claimant never returned to the UF Neurology Department for follow-up care or treatment. Nerve condition [sic] studies performed in October of 2012 were not consistent with any peripheral neuropathy in the lower extremities (Exhibit 10F/7); thus, the claimant's complaints of leg pain and weakness are not credible.

(*Id.*) The ALJ also noted that the results of Plaintiff's May 2013 lumbar MRI, which showed "only very mild findings," did not correlate with Plaintiff's claims that

6

she fell down frequently. (*Id.*) The ALJ stated: "Neither the nerve conduction studies performed in October of 2012 or the more recent lumbar spine MRI support the claimant's allegation of disabling back pain; rather, the record reveals that she is routinely seen as having a normal gait and station and [had] negative neurological findings (Exhibit 14F/14)." (Tr. 15-16.)

The ALJ's findings are supported by substantial evidence. To the extent Plaintiff invites the Court to re-weigh the evidence or substitute its decision for that of the ALJ, the Court cannot do so. As long as the ALJ's findings are based on correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if the reviewer would have reached a different conclusion.

Here, it is true that there are multiple references in the record to peripheral neuropathy, for which Plaintiff was prescribed Gabapentin and was referred to Neurology and Podiatry. (*See, e.g.*, Tr. 251-52, 255, 268, 303, 314, 316, 329, 336, 345, 374-75, 424, 466-67, 470, 527, 540, 599 (prescribed Neurontin for neuropathy), 609, 612-13, 627-28, 639 (noting that Plaintiff self-decreased her dose of Gabapentin after starting Nortryp because it was not helping with the neuropathy and she did not want to mess up her liver), 640, 643, 654.) However, as the ALJ noted, Plaintiff's physical examinations were generally normal, with no positive neurological or musculoskeletal findings. (Tr. 344, 352, 381, 525, 625 ("[N]europathy stable on [N]eurontin[.]"); *but see* Tr. 400, 411, 422, 433, & 454

7

(noting joint pain and numbness), 471-72 (noting flattening of the bilateral thenar eminences, decreased soft touch in the bilateral lower extremities and upper extremities from her fingers up to her elbows, and 'some difficulties with the Romberg'").)[3]

Although the neurologist who examined Plaintiff on September 19, 2012 opined that most likely Plaintiff had "peripheral neuropathy likely related to her human immunodeficiency virus, hepatitis C, or HAART therapy," to confirm the diagnosis, Plaintiff was sent for an EMG and nerve conduction studies.[4] (Tr. 472.) The EMG study showed no evidence of a sensorimotor peripheral neuropathy. (Tr. 583.) Instead, its findings seemed "most consistent with some bilateral S1 radicular dysfunction."[5] (*Id.*) Further, as the ALJ noted, the results of Plaintiff's May 2013 lumbar MRI did not correlate with Plaintiff's complaints of

---

[3] On examination, Plaintiff routinely had normal muscle strength and tone, steady gait, and normal psychomotor activity. (Tr. 312-13, 316, 320, 400, 423, 434, 455, 598, 611, 676, 682-83, 720.) Also, during many visits, Plaintiff reported no pain and described her activities of daily living as independent. (Tr. 253, 265, 272, 276, 278, 312, 315, 543, 554, 653.)

[4] Plaintiff was advised "that some of her dizziness may be related to her doses of the medications leading to falls." (Tr. 472.)

[5] Regardless of any diagnosis, a mere diagnosis says nothing about the severity of the condition. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (stating "the mere existence of these impairments does not reveal the extent to which they limit her ability to work"). The ALJ considered Plaintiff's impairments and incorporated into the RFC assessment only those limitations resulting from the impairments, which he found to be supported by the record. Even accepting Plaintiff's testimony that she falls once a month (*see* Tr. 44), Plaintiff does not explain how that would impact her ability to work.

frequent falls. The lumbar MRI revealed only mild degenerative changes at L1/L2 and L5/S1. (Tr. 664.)

Plaintiff also contends that the ALJ improperly rejected her subjective complaints of leg pain and weakness. Plaintiff testified that she used a cane to prevent herself from falling. (Tr. 44.) Her last fall before the March 31, 2014 hearing was in December 2013. (*Id.*) Before that time, she fell every other month or once a month. (*Id.*) As to the cane, Plaintiff stated: "Originally I got the cane because I had an operation on my foot, because I was having so much pain with the screws that they had in my foot, and then once I realized that my legs were just going numb, and I didn't know that they were going numb, my doctor told me to continue using the cane for balance." (*Id.*) Plaintiff testified that she could walk two blocks, sit for 15 or 20 minutes, and could not stand still. (Tr. 46.)

The ALJ considered Plaintiff's testimony, but did not find "any evidence that supports a need for a hand held assistive device." (Tr. 52.) The ALJ found Plaintiff's reported symptoms and limitations not entirely credible because they were not supported by objective medical findings. (Tr. 17.) The ALJ explained: "Allegations of leg pain and weakness are not credible and are unsupported by nerve condition [sic] testing (Exhibit 14F) or a lumbar spine MRI. The claimant's gait is steady and she has normal strength and muscle tone (Exhibit 2F)."[6] (*Id.*)

---

[6] The ALJ also noted that Plaintiff's credibility was undermined by her poor lifetime work history, her reports of being independent in her daily activities, and her failure to fully comply with medical treatment, among others. (Tr. 17.)

The ALJ provided explicit and adequate reasons for his credibility determination. Moreover, as shown above, these reasons are supported by substantial evidence. Plaintiff appears to rely solely on her own testimony that a hand-held assistive device is medically required. However, to make such a finding, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. Here, although the record indicates that Plaintiff uses a cane (*see* Tr. 528), there is no evidence that a hand-held assistive device is medically required. The record does not establish whether, and if so when, Plaintiff was prescribed a cane by a medical provider, who prescribed it, and even if it was prescribed at or near the time of Plaintiff's foot operation, whether it was still medically required afterwards for her alleged numbness and weakness.

Based on the foregoing, the Court finds that the ALJ's credibility determination and RFC assessment are supported by substantial evidence. To the extent Plaintiff argues that the ALJ's hypothetical question to the Vocational Expert ("VE") was incomplete because it did not include a need to use a cane, the ALJ was not required to include in the hypothetical question any limitations that he properly rejected. *See Crawford*, 363 F.3d at 1161 (stating that the ALJ is not required to include findings in the hypothetical question that the ALJ has properly

rejected as unsupported by the record). Further, Plaintiff does not explain why her representative did not question the VE regarding the need for a hand-held assistive device during the administrative hearing or why this issue was not brought up while the record remained open for 20 days after the hearing. Based on the foregoing, the Commissioner's decision is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on April 26, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record